IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COOPER NOTIFICATION, INC.,         :
                                       :
         Plaintiff,               :
                                       :
     v.                            :        Civ. No. 09-865-LPS
                                       :
TWITTER, INC., ET AL.,             :
                                       :
         Defendants.           :

## MEMORANDUM ORDER

Defendants Twitter, Inc. ("Twitter"), Everbridge, Inc. ("Everbridge"), Rave Wireless, Inc. ("Rave"), and Federal Signal Corp. ("Federal Signal") (collectively, "Defendants") have moved to stay this patent infringement action pending resolution of an *inter partes* reexamination proceeding in the United States Patent and Trademark Office ("PTO"). (D.I. 41) Plaintiff, Cooper Notification, Inc. ("Cooper"), opposes a stay. (D.I. 47) For the reasons set forth below, the Court DENIES Defendants' motion to stay.

1.     Cooper initiated this action on November 13, 2009 (D.I. 1) and filed an amended complaint on January 8, 2010 (D.I. 14). Cooper alleges that Defendants infringe United States Patent No. 7,409,428 (the "'428 patent"), entitled "Systems and Methods for Messaging to Multiple Gateways."

2.     Everbridge and Twitter answered the amended complaint on January 22, 2010 (D.I. 17; D.I. 18), while Federal Signal and Rave Wireless did so on February 26, 2010 and March 19, 2010, respectively (D.I. 27; D.I. 32). Defendants raise various affirmative defenses, including non-infringement, invalidity, estoppel, dedication to the public, limitation on damages,

1

laches, bar on recovering costs, and inequitable conduct.  (D.I. 17; D.I. 19; D.I. 27; D.I. 32)

Twitter, Federal Signal, and Rave Wireless also press counterclaims seeking declarations of non-

infringement, invalidity, unenforceability, and that the case is exceptional.  (D.I. 19; D.I. 27; D.I.

32)

3.    On August 18, 2010, Cooper requested a scheduling conference.  (D.I. 36)

4.    On September 10, 2010, Cooper filed a proposed scheduling order.  (D.I. 39)

5.    Also on September 10, 2010, Defendants filed their motion to stay.  (D.I. 41)

6.    On September 15, 2010, the Court held a scheduling conference.  (D.I. 45)

Subsequently, on October 7, 2010, the Court entered a scheduling order.  (D.I. 50)  Pursuant to

the scheduling order, discovery – which is presently at its earliest stages – is to be completed by

October 14, 2011, and trial is set for July 9-20, 2012.  (*Id.*)

7.    Briefing on the motion to stay was completed on October 27, 2010.  (D.I. 42; D.I.

47; D.I. 52; D.I. 69)  At Defendants' request (D.I. 62), the Court heard argument on Defendants'

motion on December 9, 2010.  *See* Transcript ("Tr.").

8.    Defendants filed a request for *inter partes* reexamination of the '428 patent with

the PTO on August 26, 2010, based on four prior art references.  (D.I. 44 Ex. 2)  The request

was directed to all eighteen claims of the '428 patent.  (*Id.*)  The PTO responded on November

19, 2010 by granting the request and issuing an Office Action rejecting each claim of the '428

patent under 35 U.S.C. §§ 102 and 103.  (D.I. 77)

9.    Whether or not to stay litigation pending a PTO reexamination is a matter left to

the Court's discretion.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998).  In

exercising this discretion, the Court must weigh the competing interests of the parties and attempt

to maintain an even balance. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936). The factors courts typically consider in deciding how to exercise this discretion include: (1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See, e.g., St. Clair Intellectual Property v. Sony Corp.*, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003).

10.     Before turning to the analysis of these three factors as they relate to the pending motion in the instant case, the Court must first address Cooper's argument that Defendants' motion must be denied due to Defendants' failure to articulate a clear hardship or inequity they would suffer in the absence of a stay. (D.I. 47 at 6) Cooper is correct that Defendants have failed to make such a showing.[1] While this failing does weigh against granting Defendants the relief they seek, it is not, by itself, fatal to Defendants' motion.

a.     Cooper relies on the undersigned judge's decision in *St. Clair Intellectual Property Consultants, Inc. v. Fujifilm Holding Corp.*, 2009 WL 192457 (D. Del. Jan. 27, 2009), to argue that a party seeking to stay patent litigation must always show that undue hardship or inequity will result if the litigation proceeds, or otherwise the stay must be denied.

b.     In *St. Clair*, in denying a motion to stay pending resolution of an appeal in a related case, the Court stated:

> The power of the Court to stay proceedings is incidental to its inherent power to control the disposition of the cases on its docket. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In

---

[1] The only prejudice Defendants argue they will incur in proceeding with the litigation is added cost. (D.I. 42 at 5)

3

> determining whether to grant a motion to stay, courts consider
> **_such factors as_**: (1) the length of the requested stay; (2) the
> "hardship or inequity" that the movant would face in going forward
> with the litigation; (3) the injury that a stay would inflict upon the
> non-movant; and (4) whether a stay will simplify issues and
> promote judicial economy. *Id.* at 254-55. The decision to stay a
> proceeding lies within the discretion of the Court. In exercising this
> discretion, the Court "must weigh competing interests and maintain
> an even balance." *Id.* at 255. **_Generally_**, the party seeking a stay
> "must make out a clear case of hardship or inequity in being
> required to go forward, **_if_** there is even a fair possibility that the
> stay for which he prays will work damage to some one else." *Id.*

(Emphasis added) Nowhere did the Court state that a showing of hardship or inequity in

proceeding with litigation is an absolute requirement for a stay. *See generally Landis*, 299 U.S. at

255 ("Considerations such as these . . . are counsels of moderation rather than limitations upon

power."). Rather, a showing of hardship or inequity is "generally" needed to show that the

balance of equities favors a stay. The competing interests of the parties, in seeking and opposing

a stay of litigation, are always relevant considerations. No doubt, however, circumstances may

arise in which the overall balance could be tipped in favor of a stay even if proceeding with the

litigation will cause no undue hardship or prejudice to the party seeking a stay.[2]

    11.    Turning now to the three factors cited above, the Court first considers whether a

---

[2]The Court's decision in *St. Clair* is not the only occasion on which courts have expressly referenced undue prejudice or hardship to the movant as a factor to be considered in evaluating a request to stay litigation. *See, e.g., Voith Paper GMBH & Co. v. Johnson Foils, Inc.*, 2008 WL 874311, at \*2 (D. Del. Mar. 31, 2008); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). Many courts, including in the District of Delaware, have also cited just the three factors favored here by Defendants. *See, e.g., Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, 2010 WL 4823393, at \*1 (D. Del. Nov. 22, 2010); *St. Clair*, 2003 WL 25283239, at \*1; *Motson v. Franklin Covey Co.*, 2005 WL 3465664, at \*1 (D.N.J. Dec. 16, 2005); *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 2004 WL 422697, at \*1 (N.D. Ill. Mar. 3, 2004); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, at \*2 (S.D.N.Y. Aug. 10, 2000); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 1995 WL 20470, at \*1 (N.D. Cal. Jan. 13, 1995).

stay will simplify the issues and trial of the case.

a.      This lawsuit involves numerous disputes related to the '428 patent, many of which will not be resolved in the reexamination. All Defendants dispute infringement and raise invalidity defenses under 35 U.S.C. §§ 101, 102, 103, and 112. (D.I. 17; D.I. 19; D.1. 27; D.I. 32) By contrast, the grounds for invalidity at issue in the reexamination are §§ 102 and 103. (D.I. 76 Ex. 1 at 16-17) Also, Defendants raise equitable claims: equitable estoppel defenses (all Defendants); inequitable conduct defenses (Everbridge, Federal Signal, and Rave Wireless); and laches defenses (Twitter and Federal Signal). (D.I. 17; D.I. 19; D.I. 27; D.I. 32) Additionally, Twitter, Federal Signal, and Rave Wireless seek declarations of non-infringement and unenforceability. (D.I. 19; D.I. 27; D.I. 32) None of these claims will be addressed in the reexamination. *See generally Vehicle IP, LLC*, 2010 WL 4823393, at *2 ("Because the issues left for trial do not completely overlap those that are to be resolved upon reexamination, yet each of the claims of the patents in suit are under reexamination, this factor neither favors nor disfavors a stay.").

b.      There is a possibility that all the claims of the '428 patent will be either modified or cancelled in the reexamination. If all or some of the asserted claims are cancelled, this litigation would be simplified. If all or some of the asserted claims are modified, this could render much of the parties' and Court's resources wasted – if, for instance, the Court construes claim terms that are subsequently eliminated by amendment in the reexamination. Here, however, Cooper has expressly represented that it will not amend its claims in the reexamination. (Tr. at 20)

12.    Turning to the status of the litigation, this case is still at a relatively early point, but

so, too, is the reexamination.

        a.     Discovery has just begun and will not be complete for another eleven months. Trial is still twenty months away. However, it is noteworthy that a schedule is in place and a ten-day jury trial is on the Court's calendar. The undersigned judge has something on the order of the 100 patent cases on his docket, as well as approximately 400 other civil cases, plus a criminal docket. Scheduling all of these matters is a challenge. In the instant case, in particular, significant resources were devoted to formulating a schedule. (*See, e.g.*, D.I. 36, D.I. 39 (parties' competing scheduling submissions); D.I. 45 (transcript of scheduling conference); D.I. 50 (scheduling order)) The Court sees no justification here to discard the schedule adopted at the end of this process.

        b.     This conclusion is all the more compelling, in the Court's view, given the even earlier stage of the reexamination. The PTO only just granted Defendants' request for reexamination about three weeks ago, on November 19, 2010, at which time it also issued an Office Action rejecting all the claims of the '428 patent. Cooper has two months (plus available extensions) to reply to this Office Action. (D.I. 76 Exs. 1 & 2) According to statistics published by the PTO, an *inter partes* reexamination has an average pendency of thirty-six months until the certificate issue date.[3] Therefore, it likely will be three years until an adversely affected party can appeal any decision on reexamination to the Board of Patent Appeals and Interferences – whose decision, in turn, may (and in all likelihood will) be appealed to the Federal Circuit. *See Life Technologies Corp. v. Illumina, Inc.*, 2010 WL 2348737, at *2 (D. Del. June 7, 2010)

---

    [3]*See* U.S. Patent & Trademark Office, Inter Partes Reexamination Filing Data – Sept. 30, 2010, http://www.uspto.gov/patents/stats/IP_quarterly_report_Sept_2010.pdf.

("[R]eexaminations . . . are likely to take 6.5 to 8 years to reach a final decision.").

      13.     Finally, granting a stay would unduly prejudice Cooper and provide Defendants a clear, and unwarranted, tactical advantage.

      a.     Cooper chose litigation, in this District, to resolve its allegation of patent infringement, which includes any potential validity challenge to the '428 patent. Ten months after the initiation of this lawsuit, Defendants requested reexamination. (D.I. 41) Staying this litigation in favor of the PTO proceeding would grant Defendants their choice of forum – here, for no good reason. *See generally Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002) ("The plaintiff is the master of the complaint [and] the well-pleaded complaint rule enables him, by eschewing [certain] claims . . . to have the cause heard in [the forum of his choice].") (internal quotation marks omitted).

      b.     Given the early stage of the reexamination, and the average length it takes to complete a reexamination (including appeals), it follows that the stay, if granted, would almost certainly last many years. Resuming this litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents. Much of the evidence Cooper must amass to prove infringement exists in the minds of witnesses, whose memories will inevitably fade, and who may be difficult to find as time passes. Infringement will also depend to some extent on how Defendants' accused products and services function today, which will be harder to prove years from now. By contrast, some of the matters on which Defendants bear the burden, such as invalidity of the '428 patent due to anticipation or obviousness, may not grow more difficult to prove, as they are based largely on prior art references, which do not change.

      c.     Although Cooper would be entitled to compensation for past infringement

7

if the Court grants a stay and the '428 patent survives reexamination, its right to enforce the patent in the interim would be severely hindered. (*See* D.I. 76 Ex. 1 at 7) (PTO order granting *inter partes* reexamination, stating: "The '428 Patent is currently under litigation . . . . The '428 Patent is still enforceable.") The Court sees little justification for this result in the circumstances presented here. Defendants suggest Cooper is not concerned with injunctive relief, based on what Defendants characterize as an offer by Cooper to settle with one Defendant for money. The Court is troubled by Defendants' attempt to use settlement discussions as a sword to defeat Cooper's desire to proceed with litigation rather than succumb to a stay. There is a strong and long-standing public policy favoring settlement and Defendants' use of settlement efforts in this manner is in direct tension with this policy. *See generally Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."); *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) ("The law strongly favors settlement of litigation."); *Procter & Gamble Co. v. Paragon Trade Brands Inc.*, 61 F. Supp. 2d 102, 108 (D. Del. 1996) ("Public policy strongly favors settlement of disputes without litigation.") (internal citation omitted).

        d.     Defendants further contend that injunctive relief will not be appropriate here – and is not Cooper's true goal – because Cooper did not seek a preliminary injunction and a permanent injunction will not be available as long as the asserted claims remain cancelled in the reexamination. The Court disagrees. Cooper candidly acknowledged at the hearing that it did not seek a preliminary injunction because, without substantial discovery (possibly including access to Defendants' sourcecode), it cannot meet the high burden for such relief. This tells one nothing about Cooper's motivation to obtain injunctive relief, or even about the potential irreparability of

8

any harm from any infringement (if ultimately proven).  With respect to a permanent injunction, it is enough to say that Defendants' motion to stay arises well before such relief could possibly be considered by the Court, so Defendants' contention presents no reason to stay the instant litigation at this point.[4]

        e.      Finally, Cooper and Defendants are direct competitors.  While Defendants assert the parties compete in only a small percentage of their transactions, they do concede some competition.  (D.I. 52 at 4-5)  Courts are reluctant to stay proceedings where the parties are direct competitors.  *See Vehicle IP*, 2010 WL 4823393, at *2; *Nidec Corp. v. LG Innotek Co.*, 2009 WL 3673433, at *4 (E.D. Tex. Apr. 3, 2009).

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion to Stay (D.I. 41) is DENIED.

Delaware counsel are reminded of their obligation to inform out-of-state counsel of this Order.  To avoid the imposition of sanctions, counsel should advise the Court immediately of any problems regarding compliance with this Order.

December 13, 2010

Honorable Leonard P. Stark
United States District Judge

---

[4]Defendants rely on *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 996 F.2d 1236 (Fed. Cir. 1993), for the proposition that it would be an abuse of discretion to grant a permanent injunction on an asserted patent claim that stands rejected in a pending reexamination.  (Tr. at 7-8)  Plainly, Defendants' concern is premature.  Unlike in *Standard Havens*, the instant action does not at this time involve a permanent injunction, damages proceeding, or section 145 action reviewing a reexamination decision of patentability.