**Exhibit A**

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                        - - -

4    COOPER NOTIFICATION, INC.,      :    CIVIL ACTION
                                     :
5              Plaintiff,            :
                                     :
6          v.                        :
                                     :
7    TWITTER, INC, EVERBRIDGE, INC., :
     RAVE WIRELESS, INC., and        :
8    FEDERAL SIGNAL CORP.,           :
                                     :
9          Defendants.               :    NO. 09-865 (LPS)

10                       - - -

11                  Wilmington, Delaware
                 Thursday, December 15, 2011
12                  *Telephone Conference*

13                       - - -

14   BEFORE:      HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

15                       - - -

16   APPEARANCES:

17
              POTTER, ANDERSON & CORROON, LLP
18            BY:  PHILIP A. ROVNER, ESQ.

19                   and

20            KRAMER LEVIN NAFTALIS & FRANKEL, LLP
              BY:  PAUL ANDRE, ESQ.
21                 (Silicon Valley, California)

22                 Counsel for Cooper Notification, Inc.

23

24
                          Brian P. Gaffigan
25                        Registered Merit Reporter

14

1  30(b)(6) notice.  Our preparation of witnesses were as well
2  as we could do that with all the documents and evidence that
3  was available to us at the time.
4      THE COURT:  Mr. Andre, was there a topic that Mr.
5  Milburn was designated for that you ultimately de-designated
6  him and Mr. Lowry was the person who was designated eventually
7  on that topic?
8      MR. ANDRE:  Yes, your Honor.  It was on the
9  finances, which we don't believe was relevant.
10      They said they wanted to take finances.
11      We said we don't believe Cooper's finances are
12  relevant to this case, and we have had this issue many
13  times.  And,
14      They said they want to take a witness on that
15  topic.
16      We said, well, we have one person, our
17  controller, that can testify on the spreadsheets.  And,
18      What we did, we took the QuickBooks, and I
19  believe that is an issue that was raised in the other
20  letter, and we ran spreadsheets for them, detailed it all
21  ourselves.
22      The person that actually did that was Mr. Lowry.
23  We told them that would be the person that could testify to
24  it, if they wanted to do it.  We don't think it is relevant
25  whatsoever.

15

1      Two of the defendants choose to go.  I believe
2  Twitter even chose not to show up at that because they don't
3  believe it is relevant either, obviously.  So they close to
4  take Lowry.
5      We made him available out of pure cooperation
6  instead of objecting and having to come to your Honor for a
7  motion to compel.
8      THE COURT:  Is this Topic 28 on finance,
9  Mr. Andre?
10      MR. ANDRE:  That's correct.
11      THE COURT:  So isn't it the case then that
12  whether relevant or not, there is no protective order in
13  place?  You chose to designate Mr. Milburn.  He wasn't
14  prepared at the time of the deposition that counsel were
15  at to depose him on Topic 28, and then you redesignated
16  Mr. Lowry on Topic 28 and that necessitated counsel for
17  defendants to be in New York for the sole purpose of taking
18  Mr. Lowry's deposition on Topic No. 28.
19      Is that all correct?
20      MR. ANDRE:  I wouldn't characterize it that way,
21  your Honor.  I would say that the fact of the matter is we
22  are trying to consolidate as much as we could, but Mr.
23  Lowry -- if we are ever going to provide a detailed analysis
24  of Topic 28, which counsel required, it would be Mr. Lowry.
25      If they wanted to authenticate the documents,

16

1  those are the spreadsheets, Mr. Milburn could do so.  But
2  that was all he was willing to do, that is all he is going
3  to do.
4      They wanted to dig into the details of how those
5  documents, those numbers were created.  That is going to be
6  another witness.
7      THE COURT:  And on the authentication topic and
8  document collection, are you able to say at this point
9  whether there will be any challenges to the authenticity of
10  documents that you have produced?  Challenges from you?
11      MR. ANDRE:  No, your Honor.  There will be no
12  challenges on authentication of documents.
13      THE COURT:  Okay.
14      MR. ANDRE:  Mr. Milburn was the one who
15  authenticated those were the financial documents.  They say
16  what they say.  They are just spreadsheets.
17      But they want to know how the documents are
18  generated, and that is going to be another witness.
19      THE COURT:  All right.  Let me turn it back to
20  Mr. Leach.  Is there anything you wish to add?
21      MR. LEACH:  I do.  I would like to address
22  almost everything he said.  Let's start with the finances.
23      The topic is the unit sales, customer revenue,
24  cost of goods sold, profit, expenses for each of Cooper's
25  products, if any, that allegedly practice or embody the

17

1  claimed invention.
2      This topic is directly relevant to the
3  Georgia-Pacific factors of the hypothetical negotiation.
4  We were not solely seeking to authenticate documents.  We
5  wanted to understand what documents they had.  We wanted to
6  understand what these spreadsheets meant.  There are sales
7  numbers in these documents that we needed to understand and
8  someone was supposed to testify to that.
9      For him to say it wasn't relevant is simply not
10  the case.  Those documents are absolutely relevant or this
11  topic is absolutely relevant, and it necessitated us to go
12  to New York and get this information.
13      His point about there being 100 topics.  Many,
14  if not -- maybe there is three that don't overlap.  All of
15  these topics pretty much overlap.  The defendants tried to
16  consolidate and almost copy verbatim the topics and so there
17  weren't 100 topics that they had to deal with.
18      I think, your Honor, you correctly said that
19  they had a duty to move for a protective order.  They never
20  did that.  And,
21      Then on this point there is no one at Cooper
22  that has personal knowledge of these facts?  He is just
23  wrong about that.  Unless there has been a few witnesses
24  that have since left, I don't know but I think at the time
25  they were there.

18

1    I think Mr. Brabec works for Cooper. He was one
2  of the inventors and one of the founders of Roam Secure, the
3  company way back when that dealt with a lot of this, a lot
4  these issues back then. And,
5    The same with Dan Park. He was also back then.
6  He still works at Cooper and he was one of the inventors
7  and founders of Roam Secure, the company that allegedly
8  developed the inventive technology. And,
9    Also, they represent the other inventors and
10  founders of the company that are even third-party witnesses.
11  They certainly had access to these people. They certainly
12  could have had Milburn or Hearn talk to them. So I'll leave
13  it at that.
14    THE COURT: All right. Well, I am going to grant
15  the request for sanctions in connection with the deposition
16  which I am told was on November 22nd of Mr. Lowry.
17    Topic 28 sounds as if it is a relevant topic
18  but, more importantly, there was no protective order in
19  place to make it improper to question a 30(b)(6) witness on
20  Topic 28. And,
21    In fact, Mr. Milburn was designated by Cooper to
22  testify as their 30(b)(6) witness on Topic 28. He was not
23  prepared to do so. He was de-designated, and then Mr. Lowry
24  was designated on that topic. That necessitated defense
25  counsel to be in New York to depose Mr. Lowry on Topic 28

19

1  when they had no other reason to be in New York. So I do
2  believe that sanctions are appropriate.
3    Now, mind you, I am not at this point ruling that
4  all defense counsel for all defendants will be reimbursed 100
5  percent of all of their costs associated with the November
6  22nd deposition. I will make a specific determination as to
7  precisely how sanctionable this conduct is after I receive
8  further documentation. And,
9    I will and do hereby direct the parties to meet
10  and confer and to propose to the Court by Monday a schedule
11  by which defense counsel will disclose precisely what it
12  is they are seeking in terms of a monetary sanction and to
13  provide a brief written argument in support of it and to
14  allow Cooper an opportunity to respond and defendants to
15  briefly reply to that. After I have that full record, I'll
16  make a specific determination as to the amount of sanctions.
17    With respect to the option to take an additional
18  30(b)(6) deposition on authentication and document collection
19  issues, the request is granted to that as well. The defendants
20  have that option and may take an additional 30(b)(6)
21  deposition on those topics.
22    Let's move then quickly on to the other two
23  letters. Here, it is disputes raised by Everbridge against
24  Cooper. So let me hear first briefly from Everbridge.
25    MR. COVAZOS: Good morning, your Honor. This is

20

1  Ed Cavazos for Everbridge. I am going to address the first
2  issue raised in our letter. Then any colleague, Conor
3  Civins will address the remainder.
4    I will do this very quickly because I know there
5  are several issues in our letter.
6    This first issue we think is a relatively
7  straightforward one, involves an e-mail that was produced
8  during the normal course of discovery by Cooper. As your
9  Honor may see when you review the e-mail, the e-mail
10  makes it pretty apparent that Cooper personnel had some
11  communications with ex-Everbridge employees in which we
12  believe those Everbridge employees disclosed certain trade
13  secrets to Cooper.
14    Our request is very simple, your Honor. That
15  is not as Cooper has argued it is, a de-designation, because
16  we believe these are trade secrets and we don't want this
17  document de-designated and losing protection under the
18  protective order but rather a very limited opportunity to
19  share with our client the first two pages of that document,
20  the ones that we attached to our letter brief, so that our
21  client understands the extent to which their trade secrets
22  may have been compromised, our client may take steps to
23  potentially mitigate further compromise of his trade secrets,
24  to perhaps identify which of its ex-employees are engaging
25  in the dissemination of their trade secrets.

21

1    We thought it was a pretty straightforward
2  request, your Honor. If you look at the face of this letter,
3  we don't see anything in this letter other than facts and the
4  information regarded to our client and us. We saw no basis
5  for any reason that Cooper would object to us showing this
6  letter for our clients so they could determine how best to
7  respond to it.
8    You will see in the correspondence leading up
9  to this, we even offered that Cooper, if there was something
10  they thought was somehow confidential to their client embodied
11  in this letter that we would be willing to consider what
12  that was, whether it needed to be redacted. We didn't get
13  any such specificity from them. Quite honestly, your Honor,
14  we're a little puzzled by our inability to show our client
15  this letter which purports to contain their trade secrets.
16    THE COURT: Are you willing to represent as to
17  what you would or would not put this to or that your client
18  would?
19    MR. COVAZOS: I don't think I am in a position
20  to represent that because I haven't been able to discuss the
21  specific contents of the letter with my client. I mean I
22  think it would be inappropriate for me to limit my client's
23  reaction to this before they understand the severity to
24  which the dissemination of these trade secrets may have hurt
25  them.

# Exhibit B
# Redacted in its entirety

**Exhibit C**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COOPER NOTIFICATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-865-LPS |
| | ) | |
| | ) | |
| TWITTER, INC., a Delaware corporation, | ) | |
| EVERBRIDGE INC., a Delaware corporation, | ) | |
| RAVE WIRELESS INC., a Delaware | ) | |
| corporation, and FEDERAL SIGNAL CORP., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF THOMAS R. LEACH

I, Thomas J. Leach, declare as follows:

1.      My name is Thomas J. Leach.  I am over twenty-one years of age and am fully competent to make this Declaration.   All statements contained herein are true and correct within my personal knowledge.

2.      I am an equity partner with the law firm of Merchant & Gould P.C. and have been a member of the Minnesota State Bar since 2001.  I am entering my tenth year as an intellectual property litigation attorney.

3.      I have an undergraduate degree from Iowa State University in Chemical Engineering.

4.      I am counsel for Defendant Federal Signal Corporation ("Federal Signal").

5.      I prepared for and attended the depositions of both Mr. Milburn and Mr. Hern on October 26 and 27.  Mr. Milburn was not prepared to testify on Federal Signal's 30(b)(6) topic regarding Cooper's financials and Cooper withdrew Mr. Milburn as their corporate designee on

1

that topic and others.  Cooper designated David Lowery to cover the 30(b)(6) topic on Cooper's financial information and made him available on November 22, 2011.

6.     I was unable to attend and take Mr. Lowery's deposition in New York on November 22, 2011, as I had another deposition in California that day in another matter. Thus, Chris Davis prepared for and took Mr. Lowery's deposition in New York.

7.     I reviewed Merchant & Gould's fees in this matter regarding Cooper's failure to properly prepare its 30(b)(6) witnesses and the correspondence and legal analysis in determining whether to bring this motion.

8.     I assisted in the drafting, editing and arguing of the motion for sanctions filed by Federal Signal on December 11, 2011, against the Plaintiff, Cooper Notification.

9.     On December 9, 2011, I spent 1.7 hours reviewing the testimony of Mr. Milburn and Mr. Hearn and analyzing legal issues regarding 30(b)(6) witness preparation.

10.     On December 11, 2011, I spent 3.8 hours analyzing legal issues regarding sanctions, reviewing the record, and preparing Federal Signal's letter brief for Sanctions, Docket No. 341.

11.     On December 12, 2011, I spent 3.2 hours editing, reviewing exhibits, and finalizing Federal Signal's letter brief for Sanctions, Docket No. 341.

12.     On December 15, 2011, I spent 2.2 hours preparing for and arguing Federal Signal's motion for sanction.

13.     On December 20, 2011, I spent 1.8 hours reviewing my time entries, drafting and editing Federal Signal Corp.'s December 22, 2011 Brief in Support of Motion for Award of Attorneys' Fees and Costs and this Declaration.

14. On December 21, 2011, I spent 0.8 hour reviewing and revising my declaration in support of Federal Signal Corp.'s December 22, 2011 Brief in Support of Motion for Award of Attorneys' Fees and Costs.

15. The amount of time I spent on these issues was reasonable and necessary. Moreover, the time spent on these issues was due solely to Cooper not providing a prepared 30(b)(6) witness and having to move for sanctions against Cooper for such conduct.

16. I spent a total amount of 13.5 hours analyzing legal issues regarding preparing 30(b)(6) witnesses and sanctions, preparing Federal Signal's motion for sanctions and arguing that motion, and preparing Federal Signal December 22, 2011 Brief in Support of Motion for Award of Attorneys' Fees and Costs and my supporting declaration.

17. My regular hourly rate for this matter is $450.00 per hour.

18. The total dollar amount I spent on the above tasks was $6,075.

19. The time spent related to the Motion for Sanctions have been, or will be entered into the firm's billing records, and have been, or will be, billed to Federal Signal.

Executed this 2.2 day of December, 2011.

Thomas J. Leach

**Exhibit D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| COOPER NOTIFICATION, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-865-LPS |
| | ) | |
| TWITTER, INC., a Delaware corporation, EVERBRIDGE INC., a Delaware corporation, RAVE WIRELESS INC., a Delaware corporation, and FEDERAL SIGNAL CORP., a Delaware corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>DECLARATION OF CHRISTOPHER C. DAVIS</u>

I, Christopher C. Davis, declare as follows:

1.      My name is Christopher C. Davis.  I am over twenty-one years of age and am fully competent to make this Declaration.   All statements contained herein are true and correct within my personal knowledge.

2.      I am an associate attorney with the law firm of Merchant & Gould P.C. and am a member of the Wisconsin State Bar since 2007.  I am entering my fifth year as an intellectual property litigation attorney.

3.      Prior to attending law school, I was a software engineer from 1997 to 2004.  I worked extensively with client-server applications and databases.  This experience is especially relevant to this case.

4.      I am counsel for Defendant Federal Signal Corp. in this case.

5.      I prepared for and took the deposition of David Lowrey in New York, New York as Cooper's Rule 30(b)(6) designee for financial topics.  The only reason I travelled to New

York was for that deposition.  Following my return, I spent time analyzing the results of the deposition and planning for the brief filed by Federal Signal on December 11, 2011 for sanctions against the Plaintiff, Cooper Notification.

6.      On November 17, 2011, I spent 5.5 hours on analyzing previous 30(b)(6) financial expert testimony and preparing to depose Mr. Lowrey as the replacement 30(b)(6) witness.

7.      On November 21, 2011, I spent 8.6 hours analyzing documents and preparing for Mr. Lowrey's 30(b)(6) deposition.

8.      On November 22, 2011, I spent 7.7 hours preparing for, taking, and analyzing the results of Mr. Lowrey's 30(b)(6) deposition with fellow counsel.

9.      On November 23, 2011, I spent 0.3 hours consolidating my notes and exhibits from Mr. Lowrey's 30(b)(6) deposition and providing them for use by other attorneys.

10.     On November 27, 2011, I spent 0.4 hours analyzing the results of the two financial 30(b)(6) witnesses with Attorney Tom Leach and planning how we would go about seeking sanctions for duplicate work.

11.     My regular hourly rate for this matter is $285.00 per hour.

12.     The time spent related to preparing for and deposing Mr. Lowrey under Rule 30(b)(6) and planning the Motion for Sanctions has been, or will be entered into the firm's billing records, and have been, or will be, billed to Federal Signal.

13.     My round-trip coach-class plane ticket to New York for Mr. Lowrey's deposition cost $1,349.40.

14.     My expenses in New York for cabs, lodging, and food amounted to $491.37.

15.     Attached as Exhibit A is a true and correct copy of my flight itinerary and receipts for my lodging and expenses accrued during my November 21-22, 2011 trip to New York to depose Mr. Lowrey under Rule 30(b)(6).

Executed this 21st day of December, 2011.

_____
Christopher C. Davis

Merchant Gould Confidential

# Merchant & Gould Travel Expense Report

| NAME:  Chris Davis | Timekeeper # | TODAY'S DATE:  11/28/11 |
|---|---|---|
| TRAVEL DATES: 11/21/11 - 11/22/11 | | ACCOUNT TO CHARGE: (Client, Promo/CLE, Other) :   15730.0050USZA |
| DESCRIPTION:   **Travel to New York for deposition** | | |

## DAILY EXPENSES

| MONTH/DATE | Meals | | Expense Amount | DESCRIPTION | OTHER | Expense Amount | DESCRIPTION |
|---|---|---|---|---|---|---|---|
| | M e a l s | B | | | Cab | $39.40 | Cab from airport to hotel. |
| | | L | | | Tips | | |
| 11/21/11 | | D | $42.00 | Dinner | Phone | | |
| | | Snacks | | | Other | $1.75 | Lightrail fare to airport. |
| | | Bev. | | | Other | | |
| | M e a l s | B | $20.42 | Breakfast before deposition. | Cab | $40.79 | Cab from hotel to airport. |
| | | L | $10.93 | Lunch | Tips | | |
| 11/22/11 | | D | $19.47 | Dinner at airport before flight. | Phone | | |
| | | Snacks | | | Other | $1.75 | Lightrail fare to downtown. |
| | | Bev. | | | Other | | |
| | M e a l s | B | | | Cab | | |
| | | L | | | Tips | | |
| | | D | | | Phone | | |
| | | Snacks | | | Other | | |
| | | Bev. | | | Other | | |
| | M e a l s | B | | | Cab | | |
| | | L | | | Tips | | |
| | | D | | | Phone | | |
| | | Snacks | | | Other | | |
| | | Bev. | | | Other | | |
| | M e a l s | B | | | Cab | | |
| | | L | | | Tips | | |
| | | D | | | Phone | | |
| | | Snacks | | | Other | | |
| | | Bev. | | | Other | | |
| | M e a l s | B | | | Cab | | |
| | | L | | | Tips | | |
| | | D | | | Phone | | |
| | | Snacks | | | Other | | |
| | | Bev. | | | Other | | |
| | | Total | $92.82 | | Total | $83.69 | |

Line#1                                                          Line#3

## RECONCILIATION OF EXPENSES

| TRIP EXPENSES | Expense Amount | EXP TYPE | L# | TOTAL |
|---|---|---|---|---|
| Airfare FR/TO | | DAILY MEALS | 2 | $92.82 |
| Airfare FR/TO | | DAILY OTHER | 4 | $83.69 |
| REGISTRATION | | TRIP EXPENSE | 6 | $314.86 |
| HOTEL EXPENSE (EXCLUDING MEALS) | $314.86 | TOTAL | | $491.37 |
| CAR RENTAL | | MEALS TOTAL < | | $92.82 |
| PARKING | | TRIP EXPENSES / LESS MEALS | | $398.55 |
| MILEAGE  Miles          Rate        0.555 | $0.00 | | | |
| OTHER - | | | | |
| OTHER - | | | | |
| OTHER - | | | | |
| TOTAL $$ | $314.86 | | | |

Line #5

"I declare (under penalties of perjury) this account of business expenses is accurate and conforms with all applicable M&G and IRS regulations. The expenses are actual, reasonable, and were personally incurred in performance of my official duties. No portion of this claim was previously reimbursed by M&G or from any other source or will be paid from any other source in the future."

TRAVELER'S SIGNATURE:

Page 1 of 1

130 West 46th Street
New York, NY 10036
212.485.2400 :Phone
212.485.2789 :Fax
877.692.6873 :Reservations
www.themusehotel.com



A KIMPTON HOTEL

DAVIS, CHRISTOPHER C

**Room Number:** 1005
**Daily Rate:** 260.00
**Room Type:** KGDX
**No. of Guests:** 1 / 0

US

| ARRIVAL | DEPARTURE | CREDIT CARD | RATE PLAN | CATEGORY | ACCOUNT |
|---------|-----------|-------------|-----------|----------|---------|
| 11/21/11 | 11/22/11 | XXXXXXXXXXXX | T24 | ICNS | |

| DATE | ROOM NO. | DESCRIPTION | REFERENCE | AMOUNT |
|------|----------|-------------|-----------|--------|
| 11/21/11 | 1005 | WIRELESS INTERNET/BUSINESS CTI | 1005/211515/4 | $13.00 |
| 11/21/11 | 1005 | ROOM CHARGE | #1005 DAVIS, CHRISTOPHER C | $260.00 |
| 11/21/11 | 1005 | TAX - ROOM - CITY | TAX - ROOM - CITY | $15.28 |
| 11/21/11 | 1005 | TAX - ROOM - STATE | TAX - ROOM - STATE | $23.08 |
| 11/21/11 | 1005 | TAX - ROOM - LOCAL | TAX - ROOM - LOCAL | $3.50 |
| 11/22/11 | 1005 | AMERICAN EXPRESS | AMERICAN EXPRESS | ($314.86) |

**CREDIT DUE:** ($0.00)

KIMPTON hotels & restaurants

800.KIMPTON • KIMPTONHOTELS.COM

```
--ORIGINAL--
MED#    7C33
DRIVER:  236221
CUSTOMER COPY
12/31/07 TR 1103
Regular Fare
RATE 1:$   26.10
SURCH: $    1.00
QMTnl !$    4.80
STSRCH:$    0.50
TIP: $     7.00
TOTAL: $   39.40

CARD TYPE:▓▓▓
XXXXXXXX▓▓▓
AUTH:579532

    THANKS
 TO CONTACT TLC
  DIAL 3-1-1
```

```
   I ♡ NEW YORK

HACK #  00440936
MED #       8L56
TRIP #     16281
DATE: 11/22/2011
START TIME 15:54
END TIME   16:38
RATE No.    1 1
STAND. CITY RATE
MILES R1    9.87
FARE1 $    27.30
ST. SUR     0.50
Mid-Tun     4.80
Tip/Other   8.19
GR.TOT.    40.79

 Contact TLC Dial
      3-1-1

CARDNUMBER:▓▓▓
AUTHOR.:  537343
```

```
*************************
*  RECEIPT             *
* NOT VALID FOR TRAVEL *
*************************

Nicollet Mall
TVM10205
Mon 21 Nov 11 01:26PM

Payment type:
Purchase:Full Local Fare ▓▓▓

Quantity:              1

Amount:          $ 1.75

Credit Card #:
 **** **** ****
Auth #:           02156B
Ref #:     040006359595
Transaction #:0000103075
```

```
*************************
*  RECEIPT             *
* NOT VALID FOR TRAVEL *
*************************

LindberghTerminal
TVM11302
Tue 22 Nov 11 08:35PM

Payment type:          ▓▓▓
Purchase:Full Local Fare

Quantity:              1

Amount:          $ 1.75

Credit Card #:
 **** **** ****▓▓▓
Auth #:           586756
Ref #:     030000818097
Transaction #:0000906088
```

```
    ROXY DELICATESSEN
      1565 BROADWAY
    NEW YORK, NY 10036

11/21/2011          20:53:57
Merchant ID:   00000000580625
Terminal ID:        02843907
6312559222

        CREDIT CARD

CARD #             XXXXXXXXX▓▓▓
INVOICE                  0042
Batch #:                000585
Approval Code:          560678
Entry Method:           Swiped
Mode:                   Online

PRE-TIP AMT             $35.82

TIP                     7.00

TOTAL AMOUNT            42.00

        · CUSTOMER COPY
```

```
        DUNHILL CAFE
      109 W 45TH 80
     NEW YORK NY 10036
       212-944-8484

  ▓▓▓ REPRINT ▓▓▓

Merchant ID: 000004064732
Tera ID: 00509000   Ref #: 0024

           Sale

XXXXXXXXXX▓▓▓
           Entry Method: Swiped

Amount:        $      10.93

Tip:
         ================

Total:
         ================

11/22/11            10:59:40
Inv #: 000024  Appr Code: 545240
Apprvd: Online     Batch#: 000867

  I agree to pay above total
 amount according to card issuer
  agreement (Merchant agreement if
        credit voucher)


X------------------------------
  DAVIS/CHRISTOPHE C

       Merchant Copy
```

```
Cibo Express Gourmet Market
LaGuardia Airport Terminal D
    OTG Management

116 Rosa
---------------------------------
3759  NOV22'11  5:21PM
---------------------------------
  1 Nestle Water           2.39
  1 BRBL SW Chic S         9.75
  1 KND Al Ap              2.99
  1 CC PeanButMC LG        2.75

    Food                  17.88
    TAX                    1.59
    AMOUNT PAID           19.47
    XXXXXXXXXXX           XX/XX
                          19.47

Thank You.......
We want your feedback
Please Call (866) 508 3558
or visit www.OTGManagement.com
---------------------------
```

```
              NIOS
         SWIRL SIP SAVOR
          130 W 46th St
          212-485-2999

Server: Hernan        DOB: 11/22/2011
08:23 AM                   11/22/2011
Table 21/1                  1/10018

                            1048584

Card #XXXXXXXXXXXX
Magnetic card present: Yes
Approval: 567664

              Amount:      17.42

            + Tip: _____3.00

           = Total: _____20.42


X_____

          **Guest Copy**
```

# Exhibit E
# Redacted in its entirety

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COOPER NOTIFICATION, INC.,  )
)
        Plaintiff,  )
)
        v.  )   Civil Action No. 09-865-LPS
)
)
TWITTER, INC., a Delaware corporation,  )
EVERBRIDGE INC., a Delaware corporation,  )
RAVE WIRELESS INC., a Delaware  )
corporation, and FEDERAL SIGNAL CORP.,  )
a Delaware corporation,  )
)
        Defendants.  )

## DECLARATION OF KRISTIN M. DRIEMAN

I, Kristin M. Drieman, declare as follows:

1.     My name is Kristin M. Drieman.  I am over twenty-one years of age and am fully competent to make this Declaration.   All statements contained herein are true and correct within my personal knowledge.

2.     I am a paralegal with the law firm of Merchant & Gould P.C.

3.     I assisted in compiling exhibits and editing of the brief filed by Federal Signal on December 12, 2011 for sanctions against the Plaintiff, Cooper Notification.

4.     On December 12, 2011, I spent 4.1 hours on compiling documents and editing Federal Signal's letter brief for Sanctions, Docket No. 341.

5.     My regular hourly rate for this matter is $205.00 per hour.

6.     The time spent related to the Motion for Sanctions have been, or will be entered into the firm's billing records, and have been, or will be, billed to Federal Signal.

1

7.      Attached hereto as Exhibit A is a true and correct copy of the court reporter and videographer invoice from the deposition of David Lowry taken on November 22, 2011.

8.      The total cost for court reporter and videographer services is $2216.21

Executed this 21st day of December, 2011.

*Kristin M. Drieman*
Kristin M. Drieman

# EXHIBIT A

## MERRILL CORPORATION

**LegaLink, Inc.**

920 Second Ave South
Suite 110
Minneapolis, MN 55402
Phone: 612.338.1181

# I N V O I C E

| INVOICE NO. | INVOICE DATE | JOB NUMBER |
|---|---|---|
| 14135201 | 12/16/2011 | 1439-194048 |

| JOB DATE | REPORTER(S) | CASE NUMBER |
|---|---|---|
| 11/22/2011 | LNY | 09-865 (LPS) |

| CASE CAPTION |
|---|
| Cooper Notification, Inc. vs. Federal Signal Corp., et al. |

| TERMS |
|---|
| Immediate, sold FOB Merrill facility |

**Kristin Drieman**
**Merchant & Gould**
**80 South Eighth Street**
**3200 IDS Center**
**Minneapolis, MN 55402-2215**

```
VIDEOTAPING SERVICES FOR THE DEPOSITION OF:
    David Lowry
            Set-up & First Hour                                        125.00
            Additional Deposition Hr     4.50 Hours @    36.67/Hour     165.02
            Tape Stock - Digital         3.00      @      13.33          39.99
            Video on CD                  5.00 Hours @    60.00/Hour     300.00
            Shipping & Handling                                          7.50
                                                                   _____
                                  TOTAL   DUE  >>>>                     637.51

The cost of the videographer has been split with Fenwick & West, LLP and Bracewell &
Giuliani, LLP.

Deposition Location:  New York, NY

ORDERED BY: Chris Davis
            Merchant & Gould
            80 South Eighth Street
            3200 IDS Center
            Minneapolis, MN 55402-2215
```

**TAX ID NO. :** 20-2665382                                   (612) 332-5300    Fax  (612) 332-9081

*Please detach bottom portion and return with payment.*

Kristin Drieman
Merchant & Gould
80 South Eighth Street
3200 IDS Center
Minneapolis, MN 55402-2215

Invoice No.:  14135201
Date     :  12/16/2011
**TOTAL DUE  :       637.51**

Job No.   :  1439-194048
Case No.  :  09-865 (LPS)
Cooper Notification, Inc. vs. Federa

Remit To:       **LegaLink, Inc.**
                **PO Box 90473**
                **Chicago, IL 60696-0473**

# MERRILL CORPORATION

**LegaLink, Inc.**

920 Second Ave South
Suite 110
Minneapolis, MN 55402
Phone: 612.338.1181

# INVOICE

| INVOICE NO. | INVOICE DATE | JOB NUMBER |
|---|---|---|
| 14135199 | 12/16/2011 | 1438-194047 |

| JOB DATE | REPORTER(S) | CASE NUMBER |
|---|---|---|
| 11/22/2011 | LNY | 09-865 (LPS) |

| CASE CAPTION |
|---|
| Cooper Notification, Inc. vs. Federal Signal Corp., et al. |

| TERMS |
|---|
| Immediate, sold FOB Merrill facility |

Kristin Drieman
Merchant & Gould
80 South Eighth Street
3200 IDS Center
Minneapolis, MN 55402-2215

```
ORIGINAL + 1 COPY OF TRANSCRIPT AND WORD INDEX OF:
    30(b)(6) David Lowry-HIGHLY CONFIDENTIAL     248 Pages @       4.45/Page    1,103.60
             ATTENDANCE                                                            40.00
             Unedited ASCII (RT)                221.00 Pages @       1.50/Page     331.50
             TotalTranscript                                                        45.00
             TotalTranscript Archive                                                7.50
             TotalTranscript Exhibits           109.00 Pages @        .40/Page     43.60
             Process/Delivery                                                       7.50
                                                                               _____
                                      TOTAL  DUE  >>>>                           1,578.70

Original & 2 copies has been split with Bracewell and Guiliani LLP.

Attendance has been split with with Fenwick & West, LLP and Bracewell & Giuliani,
LLP.

Deposition Location:  New York, NY

ORDERED BY: Chris Davis
            Merchant & Gould
            80 South Eighth Street
            3200 IDS Center
            Minneapolis, MN 55402-2215
```

**TAX ID NO. :** 20-2665382                                (612) 332-5300    Fax (612) 332-9081

*Please detach bottom portion and return with payment.*

Kristin Drieman
Merchant & Gould
80 South Eighth Street
3200 IDS Center
Minneapolis, MN 55402-2215

Invoice No.:  14135199
Date      :  12/16/2011
**TOTAL DUE  :    1,578.70**

Job No.   :  1438-194047
Case No.  :  09-865 (LPS)
Cooper Notification, Inc. vs. Federa

Remit To:    **LegaLink, Inc.**
             **PO Box 90473**
             **Chicago, IL 60696-0473**

**Exhibit G**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| COOPER NOTIFICATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-865-LPS |
| | ) | |
| | ) | |
| TWITTER, INC., a Delaware corporation, | ) | |
| EVERBRIDGE INC., a Delaware corporation, | ) | |
| RAVE WIRELESS INC., a Delaware | ) | |
| corporation, and FEDERAL SIGNAL CORP., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF AARON M. JOHNSON

I, Aaron M. Johnson, declare as follows:

1.     My name is Aaron M. Johnson.  I am over twenty-one years of age and am fully competent to make this Declaration.   All statements contained herein are true and correct within my personal knowledge.

2.     I am an associate attorney with the law firm of Merchant & Gould P.C. and am a member of the Minnesota State Bar since 2005.  I clerked two years for the Chief Magistrate Judge for the District of Minnesota before entering the private practice of law in 2007.  I am entering my fifth year as an intellectual property litigation attorney.

3.     I possess both a B.A. and a M.S. degree in chemistry.

4.     I am counsel for Defendant Federal Signal Corp. in this case.

5.     I assisted in the drafting, researching, and editing of the brief filed by Federal Signal on December 11, 2011 for sanctions against the Plaintiff, Cooper Notification.

6.     On December 9, 2011, I spent 3.1 hours on drafting, reviewing documents, researching, and editing Federal Signal's letter brief for Sanctions, Docket No. 341.

7.     On December 11, 2011, I spent 1.2 hours on drafting, researching, and editing Federal Signal's letter brief for Sanctions, Docket No. 341.

8.     On December 20, 2011, I spent 1.3 hours on reviewing documents and drafting and editing Federal Signal Corp.'s December 22, 2011 Brief in Support of Motion for Award of Attorneys' Fees and Costs and this Declaration.

9.     On December 22, 2011, I spent 3.0 hours on reviewing documents and drafting and editing Federal Signal Corp.'s December 22, 2011 Brief in Support of Motion for Award of Attorneys' Fees and Costs and this Declaration.

10.    My regular hourly rate for this matter is $370.00 per hour.

11.    The time spent related to the Motion for Sanctions have been, or will be entered into the firm's billing records, and have been, or will be, billed to Federal Signal.

12.    Attached as Exhibit H to this Motion is a true and correct copy of portions of the 2011 AIPLA Report of the Economic Survey, which provides average attorney billing rates for the practice of Intellectual Property law.

Executed this 22 day of December, 2011.

Aaron M. Johnson

**Exhibit H**

# AIPLA

# Report of the Economic Survey

# 2011

Prepared Under Direction of
Law Practice Management Committee

American Intellectual Property Law Association
241 18th Street South, Suite 700
Arlington, Virginia 22202
www.aipla.org

*Private Firm, Partner*

**Average hourly billing rate in 2010 (Q34)**

*Private Firm, Partner*

| | | Average hourly billing rate in 2010 | | | |
|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 622 | $441 | $325 | $410 | $535 |
| Years of Intellectual Property Law Experience | Fewer than 5 | 3 | $210 | ISD | $180 | ISD |
| | 5-6 | 9 | $345 | $240 | $275 | $325 |
| | 7-9 | 38 | $321 | $279 | $303 | $336 |
| | 10-14 | 137 | $383 | $303 | $360 | $425 |
| | 15-24 | 224 | $456 | $350 | $430 | $550 |
| | 25-34 | 147 | $481 | $375 | $450 | $595 |
| | 35 or More | 62 | $524 | $380 | $550 | $653 |
| Location | Boston CMSA | 29 | $561 | $390 | $560 | $688 |
| | NYC CMSA | 43 | $557 | $400 | $590 | $675 |
| | Philadelphia CMSA | 26 | $457 | $374 | $450 | $513 |
| | Washington, DC CMSA | 107 | $483 | $360 | $460 | $600 |
| | Other East | 23 | $355 | $265 | $340 | $420 |
| | Metro Southeast | 16 | $396 | $326 | $383 | $450 |
| | Other Southeast | 12 | $374 | $328 | $369 | $419 |
| | Chicago CMSA | 52 | $447 | $376 | $423 | $500 |
| | Minne.-St. Paul PMSA | 26 | $409 | $344 | $396 | $455 |
| | Other Central | 132 | $351 | $280 | $333 | $410 |
| | Texas | 46 | $492 | $380 | $475 | $600 |
| | Los Angeles CMSA | 21 | $500 | $385 | $475 | $603 |
| | San Francisco CMSA | 27 | $571 | $395 | $585 | $700 |
| | Other West | 62 | $368 | $300 | $350 | $421 |
| IP Technical Specialization (>=50%) | Biotechnology | 29 | $490 | $350 | $535 | $603 |
| | Chemical | 42 | $373 | $298 | $336 | $455 |
| | Computer Hardware | 10 | $583 | $388 | $600 | $781 |
| | Computer Software | 44 | $414 | $300 | $377 | $525 |
| | Electrical | 67 | $454 | $330 | $440 | $550 |
| | Mechanical | 147 | $395 | $320 | $380 | $450 |
| | Medical/ Health Care | 20 | $461 | $321 | $395 | $579 |
| | Pharmaceutical | 17 | $523 | $375 | $525 | $690 |
| | Other areas | 6 | $451 | $348 | $443 | $588 |
| Age | Younger than 35 | 10 | $247 | $180 | $238 | $303 |
| | 35-39 | 35 | $336 | $270 | $322 | $390 |
| | 40-44 | 114 | $411 | $309 | $360 | $485 |
| | 45-49 | 153 | $428 | $320 | $410 | $500 |
| | 50-54 | 98 | $455 | $349 | $433 | $520 |
| | 55-59 | 89 | $472 | $365 | $450 | $552 |
| | 60 or Older | 120 | $499 | $376 | $473 | $602 |
| Gender | Male | 566 | $442 | $325 | $410 | $531 |
| | Female | 50 | $427 | $295 | $418 | $558 |
| Highest Non-Law Degree | Bachelor's Degree | 421 | $439 | $325 | $400 | $528 |
| | Master's Degree | 118 | $441 | $329 | $423 | $525 |
| | Doctorate Degree | 38 | $437 | $312 | $395 | $558 |
| Ethnicity | White/Caucasian | 562 | $444 | $330 | $410 | $536 |
| | Black/African American | 5 | $434 | $278 | $370 | $623 |
| | Hispanic/Latino | 11 | $397 | $250 | $378 | $510 |
| | Asian/Pacific Islander | 16 | $441 | $350 | $420 | $500 |
| | North American Indian/Native Canadian | 1 | ISD | ISD | ISD | ISD |
| | Blended | 7 | $319 | $230 | $300 | $400 |
| | Other | 9 | $452 | $318 | $430 | $590 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 1-2 | 28 | $293 | $250 | $293 | $343 |
| | 3-5 | 85 | $351 | $300 | $335 | $385 |
| | 6-10 | 74 | $366 | $304 | $355 | $396 |
| | 11-25 | 149 | $402 | $303 | $385 | $475 |
| | 26-50 | 86 | $434 | $344 | $425 | $489 |
| | 51-100 | 113 | $542 | $428 | $540 | $650 |
| | 101-150 | 33 | $586 | $465 | $540 | $738 |
| | More than 150 | 45 | $606 | $518 | $600 | $663 |

*Private Firm, Associate*

**Average hourly billing rate in 2010 (Q34)**

*Private Firm, Associate*

| | | Average hourly billing rate in 2010 | | | |
|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 516 | $320 | $225 | $300 | $395 |
| Years of Intellectual Property Law Experience | Fewer than 5 | 219 | $264 | $200 | $250 | $325 |
| | 5-6 | 96 | $306 | $240 | $288 | $370 |
| | 7-9 | 69 | $362 | $275 | $345 | $435 |
| | 10-14 | 69 | $406 | $300 | $395 | $503 |
| | 15-24 | 39 | $406 | $310 | $380 | $525 |
| | 25-34 | 8 | $496 | $413 | $468 | $560 |
| | 35 or More | 5 | $439 | $240 | $325 | $695 |
| Location | Boston CMSA | 24 | $401 | $310 | $350 | $539 |
| | NYC CMSA | 31 | $433 | $300 | $410 | $545 |
| | Philadelphia CMSA | 19 | $324 | $275 | $330 | $375 |
| | Washington, DC CMSA | 102 | $375 | $289 | $368 | $450 |
| | Other East | 22 | $258 | $198 | $215 | $291 |
| | Metro Southeast | 18 | $310 | $255 | $314 | $364 |
| | Other Southeast | 14 | $249 | $204 | $240 | $300 |
| | Chicago CMSA | 33 | $334 | $273 | $315 | $410 |
| | Minne.-St. Paul PMSA | 28 | $272 | $200 | $281 | $319 |
| | Other Central | 94 | $242 | $189 | $230 | $276 |
| | Texas | 35 | $345 | $250 | $350 | $400 |
| | Los Angeles CMSA | 18 | $383 | $305 | $355 | $445 |
| | San Francisco CMSA | 19 | $361 | $260 | $370 | $470 |
| | Other West | 59 | $263 | $190 | $240 | $310 |
| IP Technical Specialization (>=50%) | Biotechnology | 26 | $319 | $229 | $305 | $375 |
| | Chemical | 37 | $318 | $270 | $300 | $355 |
| | Computer Hardware | 13 | $353 | $213 | $375 | $418 |
| | Computer Software | 60 | $335 | $240 | $318 | $400 |
| | Electrical | 57 | $330 | $230 | $325 | $408 |
| | Mechanical | 102 | $273 | $200 | $268 | $331 |
| | Medical/ Health Care | 17 | $291 | $225 | $275 | $325 |
| | Pharmaceutical | 23 | $345 | $275 | $325 | $410 |
| | Other areas | 10 | $355 | $253 | $325 | $465 |
| Age | Younger than 35 | 195 | $273 | $200 | $260 | $325 |
| | 35-39 | 129 | $322 | $220 | $300 | $410 |
| | 40-44 | 94 | $363 | $275 | $365 | $435 |
| | 45-49 | 39 | $332 | $250 | $315 | $400 |
| | 50-54 | 29 | $358 | $270 | $310 | $450 |
| | 55-59 | 12 | $391 | $350 | $383 | $439 |
| | 60 or Older | 13 | $452 | $265 | $460 | $593 |
| Gender | Male | 409 | $317 | $225 | $300 | $385 |
| | Female | 105 | $329 | $225 | $315 | $410 |
| Highest Non-Law Degree | Bachelor's Degree | 329 | $311 | $220 | $295 | $385 |
| | Master's Degree | 108 | $327 | $230 | $300 | $385 |
| | Doctorate Degree | 63 | $344 | $270 | $325 | $420 |
| Ethnicity | White/Caucasian | 460 | $320 | $225 | $300 | $395 |
| | Black/African American | 5 | $405 | $307 | $425 | $494 |
| | Hispanic/Latino | 4 | $295 | $201 | $223 | $461 |
| | Asian/Pacific Islander | 25 | $310 | $238 | $305 | $345 |
| | North American Indian/Native Canadian | 2 | ISD | ISD | ISD | ISD |
| | Blended | 8 | $317 | $293 | $300 | $378 |
| | Other | 4 | $269 | $243 | $255 | $309 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 1-2 | 12 | $245 | $166 | $213 | $330 |
| | 3-5 | 42 | $249 | $183 | $238 | $300 |
| | 6-10 | 55 | $250 | $200 | $250 | $290 |
| | 11-25 | 106 | $278 | $205 | $265 | $331 |
| | 26-50 | 96 | $332 | $233 | $310 | $400 |
| | 51-100 | 110 | $372 | $275 | $350 | $460 |
| | 101-150 | 24 | $377 | $281 | $340 | $458 |
| | More than 150 | 55 | $386 | $320 | $390 | $450 |